## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LATOYA CARNEY, ET AL.**                                 CIVIL ACTION

**VERSUS**                                                        No. 20-901

**NEW ORLEANS CITY, ET AL.**                            SECTION I

### ORDER & REASONS

Plaintiffs Latoya Carney and Byron Wilson, Sr. filed this action on behalf of their deceased son, B.W., who was killed in a vehicle chase involving officers of the New Orleans Police Department ("NOPD") on March 20, 2019.[1] The plaintiffs have asserted federal claims pursuant to 42 U.S.C. § 1983 and Louisiana state law claims against the City of New Orleans ("City"), members of the NOPD in their individual and official capacities,[2] and "ABC Insurance Companies."[3]

The City, NOPD Superintendent Shaun Ferguson ("Ferguson"), and NOPD Sergeant Stephen Nguyen ("Nguyen") move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] They argue that they cannot

---

[1] R. Doc. No. 8.

[2] The NOPD defendants are: NOPD Superintendent Shaun Ferguson; NOPD Sergeant Stephen Nguyen; NOPD officers Alex Mikkelsen, Jonathan Broom, Jeffrey Harrington, Alex Florian, William Hery, Colby Stewart; and "Doe District Commander," who oversaw the officers at the time of the pursuit and crash. *Id.* ¶¶ 19–32. The plaintiffs also sued "Does 1-10," who are "persons presently unknown to Plaintiffs after diligent search and inquiry." *Id.* ¶ 31.

[3] The amended complaint asserts a direct action under Louisiana state law against "ABC Insurance Companies," which allegedly provide insurance coverage for one or more of the other named defendants. *Id.* ¶¶ 167–71.

[4] R. Doc. No. 17. The Court will refer to the City, Ferguson, and Nguyen collectively as "defendants."

be liable under 42 U.S.C § 1983 because the plaintiffs have failed to state a claim of any constitutional violations or a policy, practice, or custom that caused the alleged constitutional violations.[5] The defendants further assert that the Court should dismiss the claims against Ferguson and Nguyen in their individual capacities because Ferguson and Nguyen are entitled to qualified immunity.[6] The defendants also ask that the Court decline to exercise supplemental jurisdiction over the plaintiffs' state law claims.[7] For the following reasons, the motion is granted.

## I.

According to the amended complaint, in the evening of March 20, 2019, sixteen-year old B.W. and fourteen-year old C.C. were driving in the Broadmoor neighborhood of New Orleans when four NOPD officers in two marked squad cars began to follow the teenagers' vehicle.[8] Believing that the car was stolen, the officers activated their lights and sirens to signal to B.W. and C.C. that they should pull over.[9] B.W. and C.C. accelerated, and the four officers decided to pursue the vehicle.[10] Two additional officers followed in pursuit in a third marked squad car.[11]

During the pursuit, the first two NOPD vehicles neared speeds of eighty miles per hour, while the third vehicle drove in excess of fifty miles per hour, on a street

---

[5] R. Doc. No. 17-1, at 1–2.

[6] *See id.* at 2.

[7] *See id.* at 23.

[8] R. Doc. No. 8, ¶ 64. The factual allegations in the amended complaint are accepted as true for the purpose of evaluating the sufficiency of the plaintiffs' pleadings.

[9] *Id.* ¶ 65.

[10] *Id.* ¶ 66.

[11] *Id.* ¶ 68. The Court will refer to the six officers who participated in the vehicle pursuit as the "officers" or "officer-defendants."

with a thirty-five mile per hour speed limit.[12] The officers' police lights were activated throughout the pursuit.[13]

After an approximate one-mile high-speed chase, B.W. and C.C. lost control of their vehicle and crashed into the Unity 1 Beauty Supply and Hair Salon at the intersection of Washington Avenue and South White Street.[14] Within seconds of impact, the vehicle was engulfed in flames, causing the salon to catch fire.[15] B.W., C.C., and a patron of the salon who was inside the building unfortunately did not survive.

Following the incident, the NOPD Public Integrity Bureau conducted an investigation and concluded that the NOPD officers acted in "purposeful" violation of several NOPD policies.[16] These included the vehicle pursuit policy, in-car camera policy, and body-worn camera policy.[17] Under NOPD policy, officers may engage in a vehicle pursuit only when they have "a reasonable suspicion that a fleeing suspect has committed or has attempted to commit a crime of violence . . . and the escape of the subject would pose an imminent danger of death or serious bodily injury to the officer or to another person."[18] Vehicle pursuits for property offenses and other non-violent infractions are prohibited.[19] Officers must receive supervisory approval before

---

[12] *Id.* ¶¶ 67–69.

[13] *Id.* ¶ 76.

[14] There appears to be a typographical error in the amended complaint's reference to "Washington Street." *Id.* ¶ 78.

[15] *Id.* ¶ 79.

[16] *Id.* ¶ 102.

[17] *Id.*

[18] *Id.* ¶ 41.

[19] *Id.* ¶ 42.

initiating a pursuit.[20] NOPD policy also requires activation of body-worn cameras during all vehicle pursuits,[21] and in-car cameras are installed in NOPD vehicles to ensure officer compliance with constitutional requirements and NOPD policies.[22]

Vehicle chases and resulting crashes were a subject of the 2012 Consent Decree between the United States Department of Justice and NOPD.[23] A provision of the Consent Decree prohibited vehicle pursuits except in specific circumstances and provided that NOPD would track and analyze vehicle pursuits by officers.[24] NOPD's implementation of the Consent Decree's requirements is being evaluated by a Monitor. In January 2019, the Monitor issued a Comprehensive Reassessment, which reported that NOPD was not yet in full compliance with the "Performance Evaluations" and "Supervision" sections of the Consent Decree.[25] The report noted that the quality of NOPD's supervisor evaluations was an area of concern.[26]

During NOPD's investigation of the March 20, 2019 incident, the four officers who first approached B.W. and C.C.'s vehicle admitted that the suspect vehicle was only wanted for a property offense and that the pursuit was in violation of NOPD

---

[20] *Id.* ¶ 43.

[21] *Id.* ¶ 73.

[22] *Id.* ¶ 71.

[23] *Id.* ¶ 38. The Consent Decree between the City and the United States Department of Justice was approved on January 11, 2013, to remedy patterns or practices of conduct by the NOPD that subjected individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, discriminatory policing practices in violation of the Fourteenth Amendment, and other federal statutes. *See United States v. City of New Orleans*, 947 F. Supp. 2d 601 (E.D. La.) (Morgan, J.), *aff'd*, 731 F.3d 434 (5th Cir. 2013).

[24] R. Doc. No. 8, ¶ 38.

[25] *Id.* ¶ 115.

[26] *Id.* ¶ 116.

policies.[27] The NOPD investigation determined that those four officers "purposefully ensured the in-car camera in their vehicle was deactivated so as not to capture the events of the incident," and that all six officers failed to properly activate their body-worn cameras.[28] The investigation also found that the officers had engaged in multiple unauthorized pursuits before March 20, 2019 without prior discipline.[29]

Following the investigation, the four officers who first approached and pursued the vehicle were fired, and the other two officers who followed the pursuit were suspended.[30]

## II.

### A. Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

---

[27] *Id.* ¶¶ 47–48.
[28] *Id.* ¶ 101.
[29] *Id.* ¶ 56.
[30] *Id.* ¶ 13.

the misconduct alleged." *Id*. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). On a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[31] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMill*an, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). Where applicable, qualified immunity can operate as one such bar.

## B. Qualified Immunity

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and

---

[31] Rule 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Where a public official invokes qualified immunity as a defense to a civil action against him, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense. *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). The court has discretion to decide which of the two prongs of the qualified immunity analysis to examine first. *Jackson*, 959 F.3d at 200.

At the 12(b)(6) stage, to hold that the defendant violated the law at step one of the qualified immunity analysis is to say that, taking the facts in the light most favorable to the plaintiff, the plaintiff has stated a claim upon which relief may be

granted—that is, that the alleged conduct violated a constitutional right. *Morgan*, 659 F.3d at 384; *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

As to the second step, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alteration in original). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Jackson*, 959 F.3d at 201 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Once a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

8

When the defense of qualified immunity is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct as alleged *in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## III.

As the parents of B.W., plaintiffs bring this action to "seek accountability" for the decisions of the NOPD officers that allegedly resulted in the death of B.W.[32] Pertinent to the instant motion, their claims against the City, Ferguson, and Nguyen allege violations of the Fourth and Fourteenth Amendment protections from unlawful seizure, excessive force, and denial of due process under 42 U.S.C. § 1983; violations of the right to due process and the right to be free from unlawful seizure and excessive force under the Louisiana Constitution; negligence and negligent infliction of emotional distress under state law; failure to train and discipline under 42 U.S.C. §

---

[32] R. Doc. No. 8, ¶ 7.

1983 and *Monell*; and vicarious liability under state law.[33] Plaintiffs also seek indemnity against the City under state law.[34]

The Court will first examine the plaintiffs' federal claims of Fourth and Fourteenth Amendment violations, as well as the failure to train and discipline; it will then address its jurisdiction over the state law claims.

## A. Constitutional Claims

The plaintiffs' federal claims, which arise under 42 U.S.C. § 1983, allege that the actions of the NOPD officers in connection with the pursuit of B.W. constituted an illegal seizure, excessive force, and denial of due process in violation of the Fourth and Fourteenth Amendments.[35] Their actions were unconstitutional, plaintiffs claim, because the officers "made a conscious decision to engage in a pursuit of B.W. despite knowing that it was in violation of NOPD policy considering the suspected crime" and "knowing that it was likely to result in injury or death to B.W. and/or innocent bystanders."[36]

The defendants do not dispute that the officers who pursued B.W. did not comply with NOPD policies.[37] However, they argue that the plaintiffs' § 1983 claims must be dismissed because the plaintiffs have failed to state a claim of any

---

[33] *See* R. Doc. No. 8. The plaintiffs also bring a failure-to-intervene claim under § 1983 against the officer-defendants. *Id.* ¶¶ 128–35.

[34] *See id.* ¶¶ 162–66.

[35] *Id.* ¶¶ 14, 127.

[36] *Id.*

[37] *See* R. Doc. No. 17-1, at 11.

constitutional violations.[38] They also assert that Ferguson and Nguyen are entitled to qualified immunity.[39]

### i. Section 1983

Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008), *cert. denied*, 572 U.S. 1087 (2014). A municipality may be liable under § 1983 when a plaintiff establishes that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

### ii. Fourth Amendment Seizure

---

[38] *Id.* at 3.
[39] *Id.*

The Fourth Amendment protects the right to be secure from unreasonable seizures. A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority terminates or restrains his freedom of movement *through means intentionally applied*." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and quotation marks omitted). "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority'" is necessary. *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [he was] not free to leave." *Id.*; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).

The plaintiffs argue that the high-speed pursuit by the NOPD officers constituted an unconstitutional seizure in violation of the Fourth Amendment.[40] Fatal to their claim, however, is caselaw that dictates otherwise. In *Brower v. County of Inyo*, the United States Supreme Court examined the precise issue in this case—whether an unconstitutional seizure occurs when there is a "police chase in which the suspect unexpectedly loses control of his car and crashes." 489 U.S. 593, 595 (1989). The Supreme Court explained:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an

---

[40] R. Doc. No. 8, ¶ 127; R. Doc. No. 22, at 7.

individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97. The reason why a suspect's accidental crash in a police pursuit does not constitute a seizure under the Fourth Amendment is that "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash." *Id.* at 597.[41] Similar facts are present in this case.

The amended complaint specifically states that B.W. and C.C., "while being pursued" by NOPD officers whose police lights were activated throughout the pursuit,

---

[41] The Supreme Court provided an illustrative distinction: "If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." *Brower*, 489 U.S. at 597. Here, the amended complaint does not allege that the officers made any physical contact with B.W.'s vehicle that terminated its movement.

The plaintiffs argue that a "non-contact vehicle chase" may constitute a seizure "under certain circumstances." R. Doc. No. 22, at 6–7. However, the case they cite, *Galas v. McKee*, 801 F.2d 200 (6th Cir. 1986), lends further credence to the Court's finding that such circumstances are not present in this case. *Id.* at 7. The Sixth Circuit explained in *Galas*:

> Clearly, during the initial stages of the pursuit when the minor plaintiff decided to flee rather than to obey the defendant officer's directive to stop, the minor plaintiff was not restrained. Just as clearly, when the pursuit terminated in an accident with personal injury to the minor plaintiff, he was not restrained by, or as a result of, the officer's show of authority. Rather, the minor plaintiff's inability to leave was because he wrecked his automobile, and no seizure occurred.

*Id.* at 203.

"lost control of their vehicle and crashed into a beauty salon."[42] While the officers may have engaged in the pursuit of B.W. and C.C.'s vehicle, "desiring" that the teenagers terminate their movement, B.W. and C.C. were not stopped by the pursuit itself. *See Brower*, 489 U.S. at 599; *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[A] police pursuit in *attempting* to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment") (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (emphasis added).

Although the plaintiffs allege that "vehicle pursuits are an instrumentality which is likely to result in significant injury or death, as this particular pursuit did,"[43] the allegations in the amended complaint present facts demonstrating that B.W. was "stopped by a different means" than the pursuit itself—the loss of control of their vehicle and the subsequent crash into the Unity 1 salon.[44] *See Brower*, 489 U.S. at 597; *see also Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (finding that no seizure occurred where the plaintiff's "termination of freedom of movement" was not accomplished "through means intentionally applied").[45] Rather than being stopped

---

[42] R. Doc. No. 8, ¶¶ 76, 78.

[43] *Id.* ¶ 126. The Supreme Court has also held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott v. Harris*, 550 U.S. 372, 386 (2007).

[44] *Id.* ¶ 78.

[45] *Gorman* involved an "accidental fatal shooting during an officer training session"; Mississippi Gaming Commission instructor Robert Sharp "forgot to replace his real firearm with a 'dummy' firearm" and "accidentally discharged his real firearm" against his fellow instructor John Gorman. 892 F.3d at 173. The Fifth Circuit found that a Fourth Amendment violation was not established because the "shooting here of Gorman—as tragic as it was—was not 'willful[ly]' performed by Sharp." *Id.* at 175.

by the officers, B.W. and C.C. "lost control of their vehicle" and crashed, ending the pursuit and, tragically, their lives.[46] Because no seizure took place, no Fourth Amendment violation of this right occurred.[47]

Accepting the well-pleaded allegations in the amended complaint as true, the Court finds that the plaintiffs have failed to plausibly allege a violation of the Fourth Amendment protection against unreasonable seizure pursuant to § 1983. Thus, this claim against the City must be dismissed. *See Baughman v. Hickman*, 935 F.3d 302, 311 (5th Cir. 2019) ("[A]n underlying constitutional violation is required to impose liability on the governmental body[.]"); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc) ("We have stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'") (quoting *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)). In addition, this claim against Ferguson and Nguyen in their official capacities must be dismissed because official capacities claims are treated as claims against the municipality. *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015); *see Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In

---

[46] R. Doc. No. 8, ¶ 78.

[47] Plaintiffs also argue that a vehicle pursuit constitutes a seizure under the Fourth Amendment because the NOPD Operations Manual provides that a "Level-4 use of force" includes "all serious uses of force," such as "[a]ny vehicle pursuit resulting in death, serious physical injury, or injuries requiring hospitalization." R. Doc. No. 22, at 7. This argument is unavailing, as caselaw and Supreme Court precedent—not NOPD policies—govern the contours of constitutional rights.

any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . [t]he official-capacity claims and the claims against the governmental entity essentially merge."); *see also Whitley*, 726 F.3d at 639 n.3 ("To the extent Whitley asserts claims against Appellees in their official capacities, we find such claims also fail for lack of an underlying constitutional violation.").

Because the plaintiffs have not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, they have also failed to meet their burden to overcome Ferguson's and Nguyen's defense of qualified immunity. *See Magee*, 675 F.3d at 869 (affirming the district court's finding that the defendants were entitled to qualified immunity and explaining that "[b]ecause we determine that the Does have failed to state a violation of [their child's] constitutional rights, we need not further consider the qualified immunity analysis"); *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.").[48] This claim against Ferguson and Nguyen in their individual capacities must also be dismissed.

---

[48] While the Court finds that the plaintiffs have failed to overcome the defense of qualified immunity invoked by Ferguson and Nguyen because they have not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, the Court notes Fifth Circuit caselaw suggesting that the § 1983 claims against Ferguson and Nguyen may be dismissed without reaching the qualified immunity issue. *See Goodman.*, 571 F.3d at 396 (explaining that because the plaintiff failed to set forth a § 1983 claim, "an analysis of [the defendant's] defense of qualified immunity is unnecessary. Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."); *Lytle*, 560 F.3d at

### iii. Fourteenth Amendment Due Process

The Fourteenth Amendment right to due process protects the individual "against arbitrary action of government." *Lewis*, 523 U.S. at 845. When faced with a due process challenge, the court must determine whether the behavior of the governmental officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 847 n.8). The "shock the conscience" standard is satisfied "where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Id.* (quoting *Lewis*, 523 U.S. at 849–50).

The plaintiffs claim that the actions of the pursuing officers "*caused* in [sic] danger in a manner that shocks the conscience."[49] The amended complaint also broadly alleges that the "actions and omissions" by the defendants in this case "were

---

410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

[49] R. Doc. No. 8, ¶ 127. The plaintiffs argue that B.W. and C.C.'s "speeding vehicle was *induced* by Defendants' behavior." R. Doc. No. 22, at 8. According to the amended complaint, this "behavior" would be the officers' activation of their lights and sirens "signaling to B.W. and C.C. to pull over"; B.W. and C.C. "accelerated" after the officers signaled to them, and the officers decided to pursue the vehicle "[w]hen [B.W. and C.C.] accelerated." R. Doc. No. 8, ¶¶ 65–66. The plaintiffs' attempt to distinguish *Lewis* from the facts of this case is unavailing. *See* R. Doc. No. 22, at 8. Even if the officers made a "conscious decision" to pursue B.W. and C.C.'s vehicle—which, according to the amended complaint "accelerated" when the officers signaled to them—the plaintiffs have not presented any facts that would support a reasonable inference that the officers' purpose was to cause harm. *See Lewis*, 523 U.S. at 854 ("[A] purpose to cause harm . . . ought to be needed for due process liability in a pursuit case.").

willful, wanton, reckless, malicious, oppressive, and/or done with a conscious disregard for the constitutional rights of the deceased to a degree that shocks the conscience."[50] The plaintiffs further argue that a Fourteenth Amendment violation can be established based on the officers' previous conduct of "similar pursuits" before March 20, 2019 that allegedly violated NOPD policy and the Consent Decree.[51]

The Supreme Court has held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redress[a]ble by an action under § 1983." *Lewis*, 523 U.S. at 854. In the amended complaint, the plaintiffs do not allege that the NOPD officers intended to harm B.W. physically or worsen his legal plight. Nor is there any allegation that their conduct intended to injure B.W. "in some way unjustifiable by any governmental interest." *See Rosales-Mireles*, 138 S. Ct. at 1906.  Rather, the amended complaint asserts that the officers "decided to pursue the vehicle" "when B.W. and C.C. accelerated"—after the officers signaled to them to pull over.[52] Although the vehicle pursuit violated NOPD policy, the reason the officers approached B.W. and C.C.'s vehicle in the first place, according to the amended complaint, was that they believed the vehicle was stolen.[53]

The facts alleged do not reflect an intent to injure B.W. or deliberate indifference to B.W.'s rights. Thus, the plaintiffs have not set forth any allegations

---

[50] R. Doc. No. 8, ¶ 123.

[51] *See* R. Doc. No. 22, at 8–9.

[52] R. Doc. No. 8, ¶¶ 65–66.

[53] *Id.* ¶ 65.

that would support a reasonable inference that the officers' behavior rises to the level of conscience-shocking conduct. While the officers did not comply with NOPD policy, "[a] failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference." *Mason*, 806 F.3d at 279. Moreover, a claim concerning a violation of a consent decree "is not cognizable under § 1983 because, under the law of [the Fifth Circuit], a remedial decree does not create rights secured by the laws within the meaning of § 1983." *Connall v. Collins*, 71 F.3d 875 (5th Cir. 1995) (citing *Galloway v. State of La.*, 817 F.2d 1154, 1157 (5th Cir. 1987)); *see Green v. McKaskle*, 788 F.2d 1116, 1124 (5th Cir. 1986) ("[A] remedial court order, standing alone, does not serve as the basis for § 1983 liability."). In addition, the fact that the officers may have engaged in prior unauthorized vehicle pursuits of other individuals does not demonstrate that the officers violated B.W.'s Fourteenth Amendment rights in this case.

Accepting the well-pleaded factual allegations in the amended complaint as true, the Court finds that the plaintiffs have failed to plausibly allege a violation of the Fourteenth Amendment right to due process. Therefore, this claim against the City, Ferguson in his official capacity, and Nguyen in his official capacity must be dismissed.[54] This claim against Ferguson and Nguyen in their individual capacities

---

[54] As stated previously, a claim against Ferguson and Nguyen in their official capacities is treated as a claim against the City.

must also be dismissed because, in the absence of a plausibly alleged constitutional violation, the plaintiffs cannot overcome the defense of qualified immunity.[55]

### iii. Excessive Force

The plaintiffs also bring a claim of excessive force, although they do not specify whether this claim is asserted under the Fourth Amendment or the Fourteenth Amendment.[56] They broadly allege that the "actions" of the NOPD officers constituted excessive force because, according to the plaintiffs, the officers "made a conscious decision to engage in a pursuit of B.W. despite knowing it was in violation of NOPD policy considering the suspected crime, knowing that it was likely to result in injury or death of B.W. and/or innocent bystanders, and that their actions actually *caused* in [sic] danger in a manner that shocks the conscience."[57]

While "excessive-force claims are typically analyzed under the Fourth Amendment," the Fifth Circuit "ha[s] recognized that an excessive-force claim may be asserted as a violation of due process" under the Fourteenth Amendment. *Hernandez v. United States*, 757 F.3d 249, 267–68 (5th Cir. 2014); *see Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998) (concluding that a plaintiff may bring a § 1983 claim of excessive force in violation of the Fourteenth Amendment). Under both the Fourth and Fourteenth Amendments, "an excessive force claim brought under § 1983 . . .

---

[55] Again, the Court notes the Fifth Circuit's guidance in *Goodman* and *Lytle* suggesting that a court need not examine the qualified immunity question if it finds that the alleged conduct did not violate a constitutional right. *Goodman.*, 571 F.3d at 396; *Lytle*, 560 F.3d at 410.

[56] R. Doc. No. 8, ¶ 127.

[57] *Id.* The plaintiffs also allege that these same "actions" constitute an illegal seizure and denial of the Fourteenth Amendment right to due process. *Id.*

begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right[.]" *Id.*

Accepting the well-pleaded allegations in the amended complaint as true, the Court finds that the plaintiffs have failed to state a claim of excessive force under either the Fourth Amendment or the Fourteenth Amendment. Because the plaintiffs have not plausibly alleged that B.W. was "seized" in violation of the Fourth Amendment, they cannot state a claim of excessive force under the Fourth Amendment. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) ("To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that [he] was seized."). Similarly, because the plaintiffs have not plausibly alleged a violation of the Fourteenth Amendment right to due process, in the absence of an intent to harm B.W., their excessive force claim under the Fourteenth Amendment also fails. *See Graham*, 490 U.S. at 394; *Petta*, 143 F.3d at 914.

Accordingly, the plaintiffs' claim of excessive force under the Fourth Amendment and the Fourteenth Amendment must be dismissed against the City, Ferguson in his official capacity, and Nguyen in his official capacity. The excessive force claim under the Fourth and Fourteenth Amendment must also be dismissed against Ferguson and Nguyen in their individual capacities because the plaintiffs

cannot overcome their defense of qualified immunity in the absence of a showing of a constitutional violation.[58]

## B. Failure to Train and Discipline

The plaintiffs claim that Ferguson, Nguyen, and the City failed to train and discipline the NOPD officers who pursued B.W.'s vehicle and that the failure to properly train and discipline the officers "was directly linked to B.W.'s death."[59] The amended complaint also alleges that the failure to train and discipline "can only demonstrate a deliberate indifference" to B.W.'s and the plaintiffs' constitutional rights.[60] The amended complaint asserts that the City was responsible for the hiring, training, and discipline of NOPD officers and that, through the NOPD, the City created, instituted, and oversaw the enforcement of the policies and procedures at issue in this case.[61] The amended complaint also alleges that Ferguson, as Superintendent of the NOPD, is responsible for the supervision, administration, policies, practices, procedures, and customs of the NOPD, as well as for the hiring, training, discipline, and control of NOPD staff, supervisors, and deputies.[62]

---

[58] The Court again questions whether a qualified immunity analysis is necessary if the Court finds that the plaintiffs have not plausibly alleged a violation of a constitutional right. *See Goodman.*, 571 F.3d at 396; *Lytle*, 560 F.3d at 410.

[59] R. Doc. No. 8, at ¶ 158. The failure to train and discipline claim is also asserted against the unidentified "Doe District Commander." *See id.* ¶ 32.

[60] *Id.* ¶ 159.

[61] *Id.* ¶ 28.

[62] *Id.* ¶ 19. The amended complaint also alleges *Monell* liability against Nguyen for failure to train and discipline, but the plaintiffs subsequently conceded that Nguyen is not a final policymaker, as required for a *Monell* claim, and that the official capacity claims against Nguyen in that respect should be dismissed. R. Doc. No. 22, at 15.

Municipalities cannot be liable under § 1983 based on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "A municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To state a *Monell* claim against a municipality, the plaintiffs must plead facts "that plausibly establish: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Piotrowski*, 237 F.3d at 578).

Supervisory officials also cannot be liable under § 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Rather, a plaintiff must show either that the supervisor "personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987)); *see Estate of Davis*, 406 F.3d at 381 ("Plaintiffs must show that the conduct of the supervisors denied [the decedent] his constitutional rights.").

In this case, because the plaintiffs have failed to plausibly state a Fourth Amendment or Fourteenth Amendment violation, the City, Ferguson, and Nguyen cannot be liable for any alleged failure to train or discipline based on these asserted

constitutional violations. *See Romero v. City of Grapevine, Texas*, 888 F.3d 170, 178–79 (5th Cir. 2018) ("In order to confer liability on the City and [the police chief] for deficient supervisory conduct, there must be 'a sufficient causal connection between [the City's] conduct and the constitutional violation.' '[I]t is facially evident that this test cannot be met if there [are] no underlying constitutional violations.'") (internal citation omitted) (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)); *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Accordingly, the plaintiffs' failure to train and discipline claim must be dismissed against the City, Ferguson in his official capacity, and Nguyen in his official capacity. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 426 (5th Cir. 2006) (explaining that because there is no underlying constitutional violation, Rule 12(b)(6) dismissal is proper, even assuming *arguendo* that "the allegations in the complaint are sufficient to provide a substitute for the doctrine of *respondeat superior* as a basis for imposing liability on the City for the tortious conduct of its agents.") (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 124 (1992)). This claim must also be dismissed against Ferguson in his individual capacity and Nguyen in his individual capacity because, in the absence of a plausibly alleged constitutional

violation, the plaintiffs have not met their burden to overcome the defense of qualified immunity.

## C. State Law Claims

A district court has wide discretion when deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011). The general rule in the Fifth Circuit is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Id.*

Having concluded that the plaintiffs' federal law claims should be dismissed, only their state law claims remain. A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissal without prejudice of the Louisiana state law claims so that the plaintiffs may assert those claims in Louisiana state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Moreover, allowing Louisiana courts to rule on Louisiana law encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Fountain v. New Orleans City*, No. 18-145, 2018 WL 3475375, at *2–3 (E.D. La. July 19, 2018) (Africk, J.) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.* Furthermore, the parties will not be unduly prejudiced because the litigation is still in its early stages.

Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### IV.

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss is **GRANTED**. The federal law claims against the City of New Orleans, Shaun Ferguson in his individual and official capacities, and Stephen Nguyen in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claims against the City of New Orleans, Shaun Ferguson, and Stephen Nguyen are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, June 24, 2020.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE